Ex parte N. K. FAIRBANK CO.

(District Court, M. D. Alabama, N. D. February 29, 1912. Additional
Opinion, March 12, 1912.)

No. 911.

**1. JUDGES (§ 51*)—CHANGE OF JUDGE—APPLICATION—AFFIDAVITS.**

Affidavits for a change of judge for alleged prejudice, affirming in legal
effect only that affiants were "informed and believed" that the judge had
a personal bias or prejudice against the defendant or in favor of the
plaintiff, but not charging that such was the fact, were insufficient to
disqualify him.

[Ed. Note.—For other cases, see Judges, Cent. Dig. §§ 224–231; Dec.
Dig. § 51.*]

**2. JUDGES (§ 51*)—CHANGE OF JUDGE—AFFIDAVITS—REQUISITES.**

Judicial Code, § 21 (Act March 3, 1911, c. 231, 36 Stat. 1090), provides
that, whenever a party shall make and file an affidavit that the judge
has a personal bias or prejudice either against him or in favor of any
opposite party to the suit, the judge shall proceed no further, but another
judge shall be designated to hear the matter, and that every such affi-
davit shall state the facts and the reasons for the belief that such bias
or prejudice exists. *Held*, that where affidavits to disqualify a judge
stated only that the affiants were "informed and believed" that the judge
had a personal bias or prejudice against the defendant or in favor of the
plaintiff, but did not state the facts and the reasons for the belief, except
certain correspondence which on its face showed the absence of either
bias or prejudice between the parties, they were insufficient.

[Ed. Note.—For other cases, see Judges, Cent. Dig. §§ 224–231; Dec.
Dig. § 51.*]

**3. JUDGES (§ 51*) — PREJUDICE — AFFIDAVITS — CERTIFICATES OF COUNSEL —
"COUNSEL OF RECORD."**

Affidavits of prejudice to disqualify a judge, certified to have been made
in good faith by nonresident counsel who had never been admitted as
attorneys of the court and who had never been recognized as counselors
at law in any proceeding had in the court, were not certified by "counsel
of record," as required by Judicial Code, § 21 (Act March 3, 1911, c. 231,
36 Stat. 1090).

[Ed. Note.—For other cases, see Judges, Cent. Dig. §§ 224–231; Dec.
Dig. § 51.*]

**4. JUDGES (§ 51*)—CHANGE OF JUDGE—APPLICATION—FILING—TIME.**

Judicial Code, § 21 (Act March 3, 1911, c. 231, 36 Stat. 1090), provides
for the disqualification of a judge for prejudice on an affidavit filed less
than 10 days before the beginning of the term of the court, or that good
cause should be shown for failure to file within that time. *Held*, that
the Code having taken effect January 1, 1912, affidavits in a then pend-
ing cause to disqualify a judge not filed until February 12, 1912, were too
late, in the absence of a showing of excuse for failure to file within the
time.

[Ed. Note.—For other cases, see Judges, Cent. Dig. §§ 224–231; Dec.
Dig. § 51.*]

**5. JUDGES (§ 51*)—CHANGE OF JUDGE—BIAS—EVIDENCE.**

Facts admitted in support of an application for change of judge *held*
to show, as a matter of law, that the judge had no prejudice against the
petitioner, or bias in favor of the plaintiff.

[Ed. Note.—For other cases, see Judges, Cent. Dig. §§ 224–231; Dec.
Dig. § 51.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**6. JUDGES (§§ 39, 45, 47\*)—DISQUALIFICATION—GROUNDS.**

In the United States a federal judge is disqualified for substantial or direct interest in the event of the litigation, because of close ties of blood or affinity to one or the other of the parties, or where he has been of counsel or a witness in the case.

[Ed. Note.—For other cases, see Judges, Cent. Dig. §§ 184, 186, 208–212, 214–219, 222, 223; Dec. Dig. §§ 39, 45, 47.\*]

**7. JUDGES (§ 51\*)—DISQUALIFICATION—PROCEDURE.**

Judicial Code, § 20 (Act March 3, 1911, c. 231, 36 Stat. 1090), provides that whenever it appears that the judge of any District Court is in any way concerned in interest in any suit pending therein, or has been of counsel, or is a material witness for either party, or is so related to or connected with either party as to render it improper for him to sit on the trial, it shall be his duty, on application of either party, to cause the fact to be entered on the records of the court, etc., and section 21 provides for the disqualification of the judge by affidavit of either party. *Held*, that a judge has no option but to retire if he is in truth interested in the suit, or has been of counsel, or has advised as to matters involved therein, or is a material witness, or is related by blood or affinity to either of the parties within the forbidden degree at the common law; but with reference to whether he is otherwise "so connected" with either party as to render it improper for him to sit on the trial of the case, he may sit, or not, in his discretion.

[Ed. Note.—For other cases, see Judges, Cent. Dig. §§ 224–231; Dec. Dig. § 51.\*]

**8. JUDGES (§ 51\*)—DISQUALIFICATION—STATUTES—PROCEDURE—PREJUDICE—DETERMINATION OF FACTS.**

Judicial Code, § 21 (Act March 3, 1911, c. 231, 36 Stat. 1090), provides that, whenever a party shall make and file an affidavit that the judge has a personal bias or prejudice either against him or in favor of any opposite party to the suit, such judge shall proceed no further therein, but another judge shall be designated to hear the matter, that every such affidavit shall state the facts and the reasons for the belief that such bias or prejudice exists and shall be filed, etc. *Held*, that the mere filing of an affidavit of prejudice under such section does not disqualify a judge, where the facts stated of themselves show as a matter of law that no prejudice exists.

[Ed. Note.—For other cases, see Judges, Cent. Dig. §§ 224–231; Dec. Dig. § 51.\*]

**9. CONSTITUTIONAL LAW (§ 55\*)—DISQUALIFICATION—STATUTES—ENCROACHMENT ON JUDICIARY.**

Judicial Code, § 21 (Act March 3, 1911, c. 231, 36 Stat. 1090), provides that, whenever a party to an action or proceeding shall make and file an affidavit that the judge before whom the action or proceeding is to be heard has a personal bias or prejudice either against him or in favor of any opposite party to the suit, such judge shall proceed no further therein, but another shall be designated to try the case, and that every such affidavit shall state the facts and the reasons for the belief that such bias or prejudice exists. *Held*, that such section, if construed literally to mean that the mere filing of such affidavit is sufficient to disqualify the judge without a hearing or determination of whether the facts stated are true or show disqualification, would be unconstitutional as depriving the courts of judicial power and vesting the same in the litigants to that extent.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 58–62, 69, 71, 80, 81, 83; Dec. Dig. § 55.\*]

In the matter of the application of N. K. Fairbank Company for a change of judge. Application denied.

---

\*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

This was an application on behalf of the N. K. Fairbank Company that the presiding judge recuse himself on the trial of the case of the Jackson Lumber Company v. N. K. Fairbank Company.

On the 20th of February, 1912, the clerk of the court called the attention of the presiding judge to the following letter from Mr. J. F. Merryman:

"St. Louis, Mo., February 12, 1912.

"To the Clerk of the U. S. District Court, Montgomery, Ala. — Dear Sir: I am inclosing you herein an application for a change of venue and the affidavits of certain officials of the N. K. Fairbank Co. in the case of the Jackson Lumber Company, a corporation, plaintiff, v. The N. K. Fairbank Co., a corporation, defendant, now pending in your court. Please call the attention of Judge Jones to these affidavits and this application, all of which are made under the new Judicial Code, which went into effect on the 1st day of January, 1912. I am,

"Very respectfully, [Signed] J. F. Merryman."

The clerk replied that the papers had been filed on the 14th of February, but were not presented to the presiding judge until the 20th of February, on account of a death in the judge's family.

The facts alleged in the petition, to state them in their chronological order, were as follows: On November 22, 1911, the presiding judge received the following letter from Circuit Judge D. D. Shelby:

"United States Circuit Court of Appeals, Fifth Circuit.
"David D. Shelby, U. S. Circuit Judge.

"New Orleans, La., Nov. 22, 1911.

"Hon. Thomas G. Jones, United States Judge, Montgomery, Alabama — My Dear Judge Jones: See inclosed a copy of a petition presented here. I doubt if a judge could be found at this time to go to Montgomery, and we would not like to designate one unless we first heard from you that you could not hear the case. No reason is stated in the petition why the case has not been heard since its removal to the federal court November 19th, 1907, but, so far as the petition shows, it may not have been at issue. It occurred to me that if you were informed of the petitioner's anxiety for a trial, you might set it down for hearing at an early date and that this would be satisfactory to all parties. I know that recently you have been very much engrossed by the hearing of important cases, but you may have a chance at some time soon to give these parties a hearing.

"Yours sincerely, [Signed] David D. Shelby."

The letter inclosed the following petition:

"In the Circuit Court of the United States for the Middle District of Alabama, at Montgomery. No. ———.

"Jackson Lumber Company v. The N. K. Fairbank Company.

"To the Honorable the Circuit Judges of the Fifth Circuit:

"The petition of the N. K. Fairbank Company, defendant in the above-entitled cause, with respect, shows that the same was removed into said court from the circuit court of Covington county, state of Alabama, on the 19th day of November, 1907, and the transcript duly filed in said Circuit Court of the United States, on the 4th day of December, 1907, as will appear by reference to the certificate of the clerk hereto annexed, and made a part hereof; that, in spite of diligent effort, your petitioner has been unable, up to the present time, to secure a trial of said cause; that, at very great expense, it has procured the attendance of witnesses at said court, expecting and urging a trial, but various matters and things intervened to prevent; that one of its witnesses has already died, and there is danger of others, whose oral testimony is desired, becoming scattered and rendering it impossible for petitioner to secure their attendance; that his honor, the presiding judge of said court, has recently announced his purpose to hold a court for two weeks at Dothan, Alabama, and will not resume the trial of causes in said Circuit Court at Montgomery until late in December, and that petitioner has reason to believe, and does verily believe, that, unless another judge shall be presently assigned to hold said court, at Montgomery, for the trial of said cause among others, petitioner will be greatly delayed

through no fault of its own, and may lose the opportunity to present its defense fully as it desires and is now able to do. And petitioner represents that, in (sic) replying (applying) for the assignment of a District Judge to hold said court temporarily, or during the absence of the presiding judge, no disrespect whatsoever is meant to the latter.

### Prayer.

"The premises considered, your petitioner respectfully prays that it may please your honor to assign and direct a District Judge to proceed and hold said court, within some short date, for the purpose of trying and disposing of said cause at least; and that the clerk of said court be directed to notify all parties of such assignment. And, as in duty bound, etc.

"[Signed]                    T. M. & J. D. Miller, Attorneys for Defendant.

"United States Circuit Court, Middle District of Alabama.

"Jackson Lumber Company v. N. K. Fairbank Company.

"I, Harvey E. Jones, clerk of said court, do hereby certify that the above-stated cause was removed from the circuit court of Covington county, state of Alabama, to the Circuit Court of the United States for the Middle District of Alabama, on the 19th day of November, 1907, and that the transcript from the state court was filed in this court on the 4th day of December, 1907; that said case is still pending on the docket of said court, and has never been tried.

"In witness whereof, I have hereunto set my hand and official seal, this the 13th day of November, 1911.

"[Signed]                    Harvey E. Jones,

"[Seal]    Clerk Circuit Court of the United States for the Middle District of Alabama."

The presiding judge replied as follows to Judge Shelby:

"Montgomery, Ala., November 23, 1911.

"Hon. D. D. Shelby, U. S. Circuit Judge, New Orleans, La. — My Dear Judge: I have yours of the 22d inst. inclosing a copy of the petition of Messrs. T. M. & D. J. Miller relative to the trial of the case of the Jackson Lumber Company against the N. K. Fairbank Company.

"These gentlemen have never appeared in this court, and it is only charitable to suppose that the petition they file, with the evident inferences they seek to have drawn therefrom, was filed in ignorance of the truth. One would suppose, from reading the petition, that the case had been in this court since the 4th of December, 1907, all the time at issue, and that the defendant never had an opportunity for a trial. The truth is directly the reverse. It is a suit commenced against a nonresident by attachment in the state court and removed to this court, and was not at issue until the spring term, 1908, which commenced on the first Monday in May of that year. At that term I was holding a very heavy criminal docket and the rate litigation pressed heavily upon me and at times I was in the Northern district. My recollection is that the common-law docket was not called at that term as it was impossible to do so. Mr. Dimmick, who was then clerk of the court was in bad health and seems to have taken no pains to have entered up anything, except where judgments were rendered, and did not enter up upon the docket the various continuances and why they were taken. I inclose a certified copy of the docket with the entries made upon it by him in his lifetime down to 1911, when the present clerk took office and entered the last order of continuance.

"Refreshing my recollection from conversations with Mr. Ball, local counsel for the Fairbank Co., and Mr. Holloway, attorney for the plaintiff, I recall that this case was called for trial among others in 1909, and that in consequence of some long drawn out and bitter litigation in cases ahead of it, that it was thought best to let the case go over for the term. At another term the case was set down for trial and owing to the extremely hot weather, at the unanimous request of the bar, the common law docket was continued for the term. I have an impression, tho I am not sure this is the case, that it once went over on account of the death of a member of the

family of one of the attorneys. On the 26th of December, 1910, the defendant filed the last of its depositions.

"At the May term this year, although I had a son who was critically ill and who afterwards died, the docket was regularly called and this case set down for trial. On the date fixed, May 9, it was continued at the instance of the plaintiff because W. S. Harlan, the president of the plaintiff company and a material witness, was then serving a term in the Federal Penitentiary at Atlanta for peonage. This did not cause an attendance of witnesses because counsel notified the other side in advance. His term of service would expire before the next term of the court, and he was the main witness for the plaintiff and at their instance the case was continued for the term, and while the defendant's attorneys did not consent to it, the justice of that disposition of the case was not contested. More than this, I had several conferences with the local counsel of the Fairbank Company, Messrs. Ball & Samford, and had taken the pains to explain to them why I could not tell them the exact date when the civil docket would be called again here—whether in October or December, or possibly in January. These gentlemen were informed that the Rate Cases had been set down for argument in October and that there were a number of pressing matters to be disposed of here, among them the Mobile Depot Case and the litigation between the light companies and also much business in bankruptcy and some cases where the government was suing for large amounts. They were also informed that I had to hold a term at Dothan, and when that term was ended I would see that the case had its turn with others and would give it an early call upon the docket. It is but just to them, to state that while Messrs. Ball & Samford got the certificate from the clerk, they had nothing to do with this application and did not know that it would be made or the terms of it.

"The dispute is about a few thousand dollars worth of turpentine which the plaintiff alleges the defendant owes them. The Fairbank Company is the defendant and is suffering no hardship other than is incident in all other litigation where for unforeseen causes the trial of a case is prevented when it is set down for hearing.

"I know of no judge who would be available at this time to come here, even if the Circuit Judges on a complaint of this sort, would think of sending a judge into another's district for trying the case of some preferred suitor, who has had several days in court and who in due time will have another. The gentlemen who drew this complaint certainly took no pains to find out the facts, and under the circumstances I do not care to advise with them, especially as they have local counsel who are able and faithful, who have been fully advised and who know all the facts. I will say to you, however, that this case will be probably reached sometime in January or February, after my return from Dothan, and then I shall take it up in its regular place on the docket and try it. The clients of these gentlemen, if not the Messrs. Miller themselves, were fully advised before this application was filed, and the real purport seems to be to complain of a judge because for good cause shown continuances were had of the case.

"With kind regards, yours sincerely,          [Signed] Thos. G. Jones."

A copy of this letter was given to Messrs. Ball & Samford, the attorneys who appeared for the defendant in this court, with the request that it be sent to the Messrs. Miller. The application and affidavits inclosed in Mr. Merryman's letter and presented by the clerk to the presiding judge on February 20, 1912, are as follows:

"United States of America, Northern Division of the Middle District of Alabama—ss.:

"In the U. S. District Court for the Northern Division of the Middle District of Alabama, December Term, 1911.

"Jackson Lumber Company (a Corporation), Plaintiff, v. The N. K. Fairbank Company (a Corporation), Defendant.

"State of Illinois, County of Cook—ss.:

"The defendant, the N. K. Fairbank Company, a corporation, acting by and through L. C. Doggett, its vice president, and F. H. Brennan, its secretary and treasurer, makes and files the following affidavit, pursuant to section 21

of chapter 1 of an act to codify, revise and amend the laws relating to the judiciary of the Congress of the United States, approved March 3, 1911, and taking effect January 1, 1912. L. C. Doggett, the affiant herein, would most respectfully show that the N. K. Fairbank Company, defendant herein, is a corporation duly organized and existing under the laws of the state of Illinois, with its principal office in the Tribune Building in the city of Chicago, county of Cook and state of Illinois; that it has places of business in St. Louis, state of Missouri, in Montreal, Canada, and at 27 Beaver street, in the city of New York, state of New York; that R. F. Munro, Esq., a citizen of the city and state of New York, is the president of the defendant corporation; that the affiant is a citizen of the city of Chicago, county of Cook and state of Illinois, and is the first vice president of the defendant corporation; that at the time of the making of this application the said R. F. Munro, defendant's said president, is not in the city of Chicago; and that said affiant is in charge of said defendant's business and holds the highest official position of defendant's corporation at the present time in the state of Illinois.

"Affiant would further show that defendant is engaged in the business of manufacturing soap, refining lard and cotton seed oil products, and that in November, 1907, the plaintiff brought by an attachment a suit in the state court of Alabama against the defendant, and that thereupon the defendant removed said cause to the Circuit Court of the United States for the Middle District of Alabama on the 4th day of December, 1907, and that said cause has been pending in said Circuit Court until the 1st day of January, 1912, on which day it was lodged in this court by the Judicial Code of the United States of America, approved March 3, 1911, and taking effect and being in force on and after the 1st day of January, 1912.

"Affiant would further show that defendant during the month of November, 1911, instructed its counsel, Messrs. Ball & Samford, to procure a certificate from the clerk of the United States Circuit Court at Montgomery, Ala., showing the date of the transfer of this cause from the state to the federal court and the docket entries of the cause in question, and by its counsel, Messrs. Miller & Miller, of New Orleans, filed a petition requesting the judge of the Circuit Court to appoint a special judge to try this case, and attaching to the said petition the certificate of the clerk aforesaid.

"Affiant further shows the court that the petition aforesaid was not intended as an act of discourtesy to the Honorable Thomas G. Jones, and that said petition was expressed in polite and courteous language, and followed the usual practice in such cases made and provided, which practice by the Judicial Code has now been enacted into a statute and is known as sections 14, 15 and 16, of chapter 1 of an act to codify, revise and amend the laws relating to the judiciary, approved March 3, 1911, and taking effect January 1, 1912.

"Affiant further shows that said petition was referred by the Honorable D. D. Shelby, Judge of the United States Circuit Court, to the Honorable Thomas G. Jones, Judge of the United States District Court, and that thereupon the said Judge Thomas G. Jones became very indignant and incensed at defendant's counsel, as affiant is informed and believes, and replied to Judge D. D. Shelby, the United States Circuit Judge aforesaid, in a manner showing his bias against the defendant herein. A copy of the letter of said Thomas G. Jones aforesaid is herewith filed with this petition, marked 'Exhibit A,' and made a part hereof.

"Affiant further shows that it is very unusual for a court to become incensed at a litigant for simply calling attention to a four years' delay in the trial of a cause and to engage in a personal discussion with said litigant, as indicated by the letter filed aforesaid, but affiant further affirms that the filing of this petition and the correspondence of the judge in relation thereto has raised such a prejudice in the mind of the judge against this defendant that defendant believes that the Honorable Thomas G. Jones cannot fairly try the issues involved in this case, and that he has a personal bias or prejudice against the defendant and in favor of the plaintiff.

"Affiant would further state that the defendant is informed and believes that Mr. W. S. Harlan, one of the officials of plaintiff corporation, has such

an influence over the mind of this court that the defendant cannot obtain a fair and impartial hearing of this cause, and further affiant saith not.

"[Signed]   L. C. Doggett.

"State of Illinois, County of Cook—ss.:

"L. C. Doggett, being duly sworn, on his oath states that the matters and things set forth in the foregoing affidavit are true, except the facts stated therein on information and belief, and these he believes to be true.

"[Signed]   L. C. Doggett.

"Subscribed and sworn to before me this the 25th day of January. 1912. My commission expires on Sept. 8, 1912.

"[Signed]   A. S. 'Anderson, Notary Public.   [Seal.]

"State of Illinois, County of Cook—ss.:

"F. H. Brennan, being duly sworn, on his oath states that he is secretary and treasurer of the N. K. Fairbank Company, the defendant corporation, and that during the past four years he has had the immediate charge and supervision over the litigation of defendant, and that he has read the foregoing affidavit of L. C. Doggett, defendant's vice president, and that he believes the matters and things set forth therein are true, and that Hon. Thomas G. Jones, the District Judge aforesaid, cannot fairly try the issues in this case, for the reason that he has a personal bias or prejudice against the defendant and in favor of the plaintiff.       [Signed]   F. H. Brennan.

"Subscribed and sworn to before me this 25th day of January, 1912.   My commission expires on Sept. 8, 1912.

"[Signed]   A. S. Anderson, Notary Public.   [Seal.]

"I hereby certify that I am the attorney of the N. K. Fairbank Co., the defendant in the above-entitled cause, and that I reside in the city of St. Louis, and am a member of the bar of the city of St. Louis of the state of Missouri, and that I have prepared the foregoing affidavits at the request and as the attorney of the defendant, and that I prepared the former petition which was presented by Messrs. Miller & Miller, attorneys of New Orleans, to the judge of the United States Circuit Court at New Orleans, and I further certify that I am familiar with the proceedings in this cause, and that the affidavit and application for a change of venue herein are made in good faith and not for the purpose of delay or hindrance of the proceedings herein, and therefore the defendant prays that the said Thomas G. Jones, judge of the District Court for the Northern Division of the Middle District, shall proceed no further in the hearing hereof, and defendant further prays that the said Thomas G. Jones shall cause this fact to be entered on the records of the court, and also for an order that an authenticated copy thereof shall be forthwith certified to the senior Circuit Judge of this circuit, and for all further proceedings hereof as provided in sections 14, 20, 21 and 23 of an act to codify, revise and amend the laws relating to the judiciary of the Congress of the United States, approved March 3, 1911, and taking effect January 1, 1912.

"[Signed]       '       J. F. Merryman, Attorney for Defendant."

Exhibit A therein being the correspondence between the presiding judge and Judge Shelby.

JONES, District Judge. On the 12th of February, 1912, Mr. J. F. Merryman, who describes himself in the papers as "the attorney of the N. K. Fairbank Company" and "a resident member of the bar of the city of St. Louis of the state of Missouri," mailed from that city to the clerk of the court here an application and affidavits, praying that the presiding judge proceed no further in the case of the Jackson Lumber Company v. N. K. Fairbank Company, and certify the matter to the senior Circuit Judge of this circuit pursuant to the provisions of the Judicial Code. The papers, as the correspondence between Mr. Merryman and the clerk shows, were not presented to the presiding judge until February 20, 1912, on account of a death in his

family, but were marked "Filed" by the clerk on the 14th of February, 1912, the date of their receipt; the judge having no knowledge or information of their existence until their presentation to him on February 20, 1912.

Messrs. Ball & Samford, the counsel of record of the Fairbank Company in this court, each advise the judge that they had and are taking no part in this application, and so far as they are concerned they are willing to try the case before the presiding judge.

[1] The matter thus presented has been duly considered, and I now give my conclusions, reserving for another time the filing of a more extended opinion. Assuming without deciding the constitutionality of the statute, the application and affidavits are fatally defective, whether construed separately or in connection with the application to which they refer, because they do not charge as a matter of fact that the judge "has a personal bias or prejudice against the defendant or in favor of the plaintiff." They affirm in legal effect only that affiants are "informed and believe" such is the fact. Pollard, Assignee, et al. v. Southern Fertilizer Company, 122 Ala. 410, 25 South. 169; Schilcer v. Brock & Spight, 124 Ala. 626, 27 South. 473.

[2] Second. They are not accompanied by any statement, as the Judicial Code explicitly requires, "of the facts and the reasons for the belief," save in one immaterial instance, the correspondence, which on its face, both as matter of law and morals, disproves the existence of either bias or prejudice between the parties.

[3] Third. The certificate of good faith is not made by any "counsel of record" of this court. The gentleman who makes the certificate has never been admitted as an attorney of this court. He has never signed the roll of its attorneys or taken the oath as required by its rules, and has never been recognized by the court as a counselor thereof in any proceeding had in this or any other cause in this court. Ex parte Secombe, 19 How. 9, 15 L. Ed. 565.

[4] Fourth. If the Judicial Code applies to a case pending at the time it went into effect, which it does not (Henry v. Harris et al. [C. C.] 191 Fed. 868), the petitioner has failed to bring itself within its provisions, because it did not present the application within 10 days after the Code went into effect on January 1, 1912, but delayed attempting to file the affidavits until February 12, 1912, during which period the court was always open in the term at which the case stood for trial, and the affidavits and application offer no excuse for the failure to act within the time prescribed by the statute. State v. Donlan, 32 Mont. 256, 80 Pac. 244.

[5] Fifth. The correspondence between the presiding judge and Judge Shelby, made an exhibit to the petition, shows on its face as a matter of law that the presiding judge has no prejudice against the defendant or bias for the plaintiff. It does not even show prejudice against the petitioner's attorney who wrote the application which called forth the letter to Judge Shelby. Conn v. Chadwick, 17 Fla. 429; City of Emporia v. Volmer, 12 Kan. 627; State v. Ingalls, 17 Iowa, 8; People v. Williams, 24 Cal. 31; State v. Bohan, 19 Kan. 54; Turner v. Commonwealth, 2 Metc. (Ky.) 629; People v. Findley,

132 Cal. 304, 64 Pac. 472; Higgins v. San Diego, 126 Cal. 303, 58 Pac. 700, 59 Pac. 209; Smith v. Commonwealth, 108 Ky. 56, 55 S. W. 718.

The application and affidavits make no case under the statute and disclose nothing which could excuse, much less justify, the presiding judge in abdicating his duty under the Constitution and laws. The affidavits and application were marked "Filed" by the clerk without the knowledge or order of the presiding judge. Not conforming to the statute, but being defective in the particulars stated, they were not entitled to be filed under the plain terms of the Judicial Code, and could only be presented to the judge. Wolf v. Marmet, 72 Ohio St. 578, 583, 74 N. E. 1076.

It is exceedingly desirable that the action of the presiding judge in this matter be reviewed. He will give any co-operation in his power to a speedy decision, if the petitioner will advise him that it desires to take steps to that end, and if so advised will not try the case on the day set on the docket, but will postpone the hearing to some other day.

It is considered that the indorsement of filing upon said papers by the clerk on February 14, 1912, be, and the same is hereby, expunged; and that the prayer of the N. K. Fairbank Company that the presiding judge recuse himself and certify the matter to the senior Circuit Judge of this circuit be, and they are, each severally and separately overruled and denied, at the cost of the petitioner.

### Additional Opinion.

The petition and affidavits were mailed from St. Louis to the clerk without brief or argument in support of the application. The counsel of record of the petitioner, although representing their client in other matters in the case, declined to have anything to do, one way or the other, with the application. The matter is of no legal concern to the plaintiff in this suit, and its attorneys could not appear on this application except as amici curiæ and have not done so. Being deprived of the benefit of argument at the bar by the attorneys of the parties, I sought the advice of a number of eminent members of the bar as amici curiæ as to the validity and construction of the statute and other matters raised before passing upon them, and since the denial of the application I have again gone over the whole matter carefully. All the members of the bar with whom I advised, and such of my brothers of the state bench as I had opportunity to consult, concurred in the opinion that there was nothing in the matters set up in the petition which could afford the presiding judge the slightest justification or excuse, in ethics or morals, for refusing to sit in the case. All the members of the bar with whom I consulted advised that the application was properly denied, except two of them, and the reasons for their contrary conclusion, based on pure matter of law, are fully stated in a subsequent part of this opinion.

At the common law substantial or direct interest in the event of the litigation, or close ties of blood or affinity, were the only causes of disqualification of a judge. As late as 1859 the House of Lords, in

Thellusson v. Rendlesham, 7 H. L. Cases, 429, held that having been of counsel did not necessarily disqualify the judge. He was privileged to retire from the bench because of such relation, but was not bound to do so, especially when he was the only judge of the court. See the remarks of the Lord Chancellor and of Lord Brougham in that case at pages 429 and 430. See, also, Lyon v. State Bank, 1 Stew. (Ala.) 462; Blackburn v. Craufurd, 22 Md. 447; Bank of North America v. Fitzsimons, 2 Bin. (Pa.) 454; Taylor v. Williams, 26 Tex. 583. However, the practice of eminent judges to voluntarily recuse themselves when they had been of counsel created precedents which gradually rooted themselves into the common law of England, and became a part of it (though not technically acknowledged as such), and made the prior relation of counsel in the matter, as well as interest in the suit and close ties of blood or affinity, absolute grounds of the disqualification of the judge. These are the only causes for the disqualification of a judge under the common law of England as now administered in England.

[6, 7] It was held in the early cases in the United States, in the absence of a statute, that there could be no peremptory challenge of a judge because he had been of counsel in the case. In practice, however, connection as counsel in the case was treated in this country as a positive disqualification, as much so as kinship or interest in the event of the suit. As early as 1821, a statute, now embodied in section 20 of the Judicial Code, dealt with the case of a judge, "whenever it appears he is in any way concerned in interest in any suit pending therein, or has been of counsel or is a material witness for either party, or is so related to or connected with either party as to render it, in his opinion, improper for him to sit on the trial," and made it his duty, "on application by either party, to cause the facts to be entered on the minutes of the court," and he was then required to order an authenticated copy of the record certified to another court, etc. Spencer v. Lapsley, 20 How. 266, 15 L. Ed. 902. The words in section 20 of the Judicial Code, "as to render it, in his opinion, improper for him to sit on the trial," so far as I can ascertain, have never been construed to leave it to the judge's option whether he should retire from the case if he were in truth interested in the suit, or he had been of counsel or advised as to matters involved in it, or is a material witness, or related by blood or affinity to either of the parties within the forbidden degrees at the common law; but only to leave it to his conscience and judgment to sit or not when from other causes he is "so connected" with either party "as to render it, in his opinion, improper for him to sit on the trial" of the case. The presumption at the common law in this respect, which has always been followed by the federal courts, is conclusive that a judge is not a fit person to sit on the trial of a case where he is interested or his close kin or relatives are concerned, and perhaps where he has been an attorney in the case. On the other hand, in the absence of such conditions, the presumption of the rectitude of the judge in the discharge of his duties in all other situations was indisputable; and hence the objection to a judge for any other than the causes named was unknown to the federal juris-

prudence until the enactment of the Judicial Code. Up to that time the experience of statesmen, lawgivers, and judges for centuries had taught that it was not wise to allow a challenge of a judge on the allegation of personal bias or prejudice, an intangible fact, a mere mental status which is hard to prove and still harder to disprove, and that the abuses and evils resulting from allowing such challenges would far outweigh any good which could be effected by permitting them. The fact, however, that this had been the rule for centuries past does not necessarily prove that the old rule was wisest and best.

All reforms and changes must have a beginning. At one time, as appears by the Statute 8 Rich. II, c. 2:

"No man of law shall thenceforth be justice of assize or of the common delivery of jails in his own country."

And by the Statute 33 Henry VIII, c. 24:

"No justice nor other man learned in the law of this realm shall use or exercise the office of justice of assize within any county where the said judge was born or doth inhabit, on pain to forfeit for every offence contrary to said act 100 pounds."

·Though these statutes had long been in force, the Statute 12 Geo. II, c. 27, wisely changed the old rule, and made it lawful thereafter:

"For the chief justice and the justices of either bench and the chief baron and the other barons of the Court of Exchequer, and to and for any other person or persons learned in the law, who shall be appointed justice or justices of oyer and terminer or of jail delivery in any county or counties in that part of England called Great Britain, to exercise the office in any such county notwithstanding they or any of them shall have been born or do inhabit within any such county or counties."

The reason of our present statute may have been that Congress believed that the judges in these days are not as impartial as their predecessors were in the past, or that litigants and attorneys, in the fierce struggles which are daily waged in the courts concerning life, liberty, and property, and the antagonisms they beget between the parties, and not infrequently between their attorneys and the courts, are more conservative and self-contained than litigants and their advocates in the days of old, and would not be prone to abuse the right given by the statute. At all events, Congress thought there was an evil which should be remedied by changing the old rule. It is the duty of courts and judges to enforce its policy in this respect as enacted in the Judicial Code, as far as can be done without violating the Constitution.

The statute relied on to sustain the application is found in section 21 of the Judicial Code, and reads as follows:

"Sec. 21. Whenever a party to any action or proceeding, civil or criminal, shall make and file an affidavit that the judge before whom the action or proceeding is to be tried or heard has a personal bias or prejudice either against him or in favor of any opposite party to the suit, such judge shall proceed no further therein, but another judge shall be designated in the manner prescribed in the section last preceding, or chosen in the manner prescribed in section twenty-three, to hear such matter. Every such affidavit shall state the facts and the reasons for the belief that such bias or prejudice exists, and shall be filed not less than ten days before the beginning of the term of the court, or good cause shall be shown for the failure to file it within such time.

No party shall be entitled in any case to file more than one such affidavit; and no such affidavit shall be filed unless accompanied by a certificate of counsel of record that such affidavit and application are made in good faith. The same proceedings shall be had when the presiding judge shall file with the clerk of the court a certificate that he deems himself unable for any reason to preside with absolute impartiality in the pending suit or action."

The section, on its face, is a peremptory command "whenever a party shall make and file an affidavit," conforming to the terms of the statute, that the presiding judge shall "proceed no further," and that "another judge shall be designated to try the case." The decisions in states having statutes similar to the Judicial Code are conflicting. The courts in some of the states hold that the affidavit shuts off all judicial inquiry, and, even though the facts alleged may be insufficient to show bias or prejudice, that the judge is bound to grant the application. In other jurisdictions it is held that, while the truth of the facts alleged cannot be contested, yet if the facts alleged, taking them to be true, do not show personal bias or prejudice, the application should be refused. Other cases hold that the truth of the affidavit is subject to contest, to be tried before the judge in question, and upon the proof made before him the application must be granted or overruled.

The law and public opinion have long since departed from the policy of bygone ages, illustrated in the statutes of Richard and Henry, that a judge ought not to exercise his functions in the county where he was born, or in the place "he doth inhabit." Ever since the courts of the United States were organized, the laws of the United States have provided that a judge "shall be appointed for each district," save in exceptional cases, and made the judge guilty of a high misdemeanor if he did not reside in his district, or one of them, if he was judge of more than one. If the judge "lives, moves and has his being" among the people, he must in the course of his life imbibe bias or prejudice in the popular sense as to very many persons.

"Prejudice or bias," in the ordinary sense of the term, and not censurable in its character, may arise from innumerable conditions in life. A man ordinarily has a bias in favor of the political party to which he belongs, or a prejudice in some degree against its opponents. The same thing is true in a degree as to the church of which he is a member, and he is generally prejudiced or biased more or less about his race, his country, and its institutions. He cannot avoid forming to some extent bias or prejudice regarding men and affairs in nearly every matter as to which he has to inform his judgment or regulate his conduct in the walks of daily life. He must have neighbors, friends, and acquaintances, business and social relations, and be a part of his day and generation. Evidently the ordinary results of such associations and the impressions they create in the mind of the judge are not the "personal bias or prejudice" to which the statute refers. The impressions, whether favorable or unfavorable, of men, which a judge receives, or his convictions about them growing out of his contact or acquaintance with them in the ordinary walks of life, cannot fall within the evil the statute designs to suppress, unless they are so strong that they result in personal bias or prejudice as to in-

dividual suitors, dominating the judge to such an extent that they beget a mental or moral condition which makes the judge willing to do wrong although he sees the right, regarding the justiciable matters brought before him, or else, though the judge's intentions be good, render him incapable of rightly seeing the justice of the cause, or impartially enforcing the right involved as between the parties to the suit.

[8] It is not the proper construction of the Judicial Code to hold that Congress intended that any reason that a litigant may choose to assign in his affidavit, however absurd or ridiculous in point of law or morals, will disqualify the judge, or render it improper for him to preside in the case. "The statute meant that the cause should be a legal and substantial one." 2 Metc. (Ky.) 629. The facts stated must be strong enough to overcome the presumption of the trial judge's integrity and of the clearness of his perceptions. State v. Bohan, 19 Kan. 54. "The affidavit or affidavits must not only state facts, but the facts stated must establish to the satisfaction of a reasonable mind that the judge has a bias or prejudice which will in all probability prevent him from dealing fairly with the defendant." People v. Findley, 132 Cal. 304, 64 Pac. 472. If the reasons assigned are frivolous, the court must deny the application. State v. Chantlain, 42 La. Ann. 719, 7 South. 669. The rule is nowhere better stated than by Judge Brewer, afterwards Justice Brewer of the United States Supreme Court, in City of Emporia v. Volmer, 12 Kan. 627, where he says:

"That such facts and circumstances must be proved by affidavits, or other extrinsic testimony, as clearly show that there exists a prejudice on the part of the judge towards the defendant, and unless this prejudice clearly appears, a reviewing court will sustain an overruling of the application on the ground that the judge must have been personally conscious of the falsity or nonexistence of the grounds alleged. It is not sufficient that a prima facie case only be shown, such a case as would require the sustaining of a challenge to a juror. It must be strong enough to overthrow the presumption in favor of the trial judge's integrity and of the clearness of his perceptions. See, as going beyond the views herein expressed, the cases of Hungerford v. Cushing, 2 Wis. 397, and Table M. M. Co. v. Wallers D. M. Co., 4 Nev. 218, 97 Am. Dec. 526; and, as sustaining these views, Gordon v. State, 3 Iowa, 412, State v. Ingalls, 17 Iowa 10, Boswell v. Flockhart, 35 Va. 364, and People v. Williams, 24 Cal. 31. Under these circumstances, there can be no impropriety in the judge placing a statement upon the record of such facts as may explain the reasons for his rulings, or account for the statements or charges made in the application."

Every practitioner or judge of experience understands full well, under the circumstances of this case, that the statements in the application made at New Orleans, though in form the utterances of the defendant, were in fact and in truth the suggestions of some of its attorneys. Knowing how prone clients are to follow the advice of their attorneys, especially when they suggest that a judge is biased or prejudiced against them, no normal judge, with any regard for the oath of his office or the ordinary instincts of fair play, would blame the defendant here for following the advice of its attorney, or would be tempted, much less permit himself, to do injustice to the client on the merits of the case, because it had taken the advice of its attorney.

The only reason stated as a fact, and not alleged on information and belief, to show personal bias or prejudice between the parties, is the correspondence between the presiding judge and Judge Shelby, which is made an exhibit to the petition and refers to the application made to the Circuit Judges to designate another judge to try this case. No reference whatever was made to the merits of the litigation, or preference expressed between the parties, or intimation of any kind given either as to the law or the facts of the case. The letter was written in the discharge of judicial duty, concerning the trial of a case pending in the court, in reply to a letter of the Circuit Judge advising the writer of the application made by the petitioner here to send another judge into the Middle district of Alabama specially to try this case "at least." The application was made without the knowledge of the regular judge or consultation with him. It showed that the writer of it knew that "the presiding judge has recently announced his purpose to hold a term of the court at Dothan for two weeks and will not resume the trial of causes in said Circuit Court until late in December." The fair presumption was that the defendant must have gotten this information from its local attorneys, and that they had also correctly informed the defendant, before it applied to the Circuit Judges, of the causes which had prevented the trial of the case. The general terms in which the application was couched, particularly when taken in connection with the recitals in the clerk's certificate appended to the application in place of an affidavit, which was drawn by defendant's counsel, was calculated to produce upon the minds of the Ciruit Judges the impression that the presiding judge, either by lack of diligence or some other fault or neglect, had not given the defendant's case due consideration or opportunity to be tried, and that the circumstances under which the delay had occurred were so extraordinary and worked such oppression of the defendant that another judge should be sent forthwith into the district to try this case "at least." One who knew nothing of the facts, except as disclosed in the application and the clerk's certificate, would never have supposed that there had been any continuances of the case by the consent of the defendant, or for other good cause, or that the last of defendant's depositions had been filed as late as December 26, 1910; nor in the absence of knowledge of the record, which was possessed by the presiding judge when he wrote to Judge Shelby, that the defendant in its preparation for trial had not even asked the publication of any of its depositions, or procured subpœnas to require the attendance of any witnesses to testify orally at any time.

The presiding judge could not be expected to know, what did not then appear, but is now alleged to be a fact, that the defendant had instructed its attorney to get a certificate of the "docket entries," but that in following those instructions its attorneys drafted a certificate for the clerk which omitted intentionally, apparently, all the docket entries, save those which showed when the case was removed and the date of the filing of the transcript in this court, and made no mention whatever of the time of the filing of the pleas which showed when the case was first at issue, or the date of such of the continuances as

appeared on the docket and the reasons therefor. The situation as stated in the application was so different from the real situation that it induced me to say in the letter to Judge Shelby:

"It is but just to them to state, that while Messrs. Ball & Samford got the certificate from the clerk, that they had nothing to do with this application and did not know that it would be made or the terms of it."

The application sent to New Orleans, in the terms in which it was couched, and not giving material information about the case known to the local counsel of the defendant, and therefore known to it, was an effort, on a one-sided statement of the case, to get another judge sent into this district as a favor to the litigant, and under the circumstances was manifestly unjust to the presiding judge, and, notwithstanding the polite language in which its purpose was veiled, was exceedingly discourteous.

It was certainly not the duty of the judge, when the application was called to his attention in the manner in which it was, to sit dumb and refrain from stating that the client, if not the lawyers themselves, were fully advised of the facts before this application was filed; that the truth was the reverse of the past history of the case as sought to be portrayed in the petition; that "the real purport seems to be to complain of a judge because for good cause shown continuances were had of the case"; or that he did not care to confer further with attorneys who had not appeared in the case and were so misinformed about it, as to setting it "down for hearing at an early date," that would be "satisfactory to all parties," as suggested in Judge Shelby's letter, when the defendant had local counsel with whom the judge had already conferred and who had been fully advised.

Common sense and the authorities alike teach that such expressions of opinion by a judge in the discharge of duty, concerning either the conduct of a litigant or its attorneys, are not evidence of personal prejudice or bias as to either, and such comments and expressions have never yet been held, either in law or morals, to unfit a judge to try a case in which such observations have been made. The letter, for that matter, does not show any personal prejudice against the attorney who wrote that application, and prejudice of a judge against a counsel of a party, when it exists, does not disqualify a judge from presiding in a case in which the lawyer is engaged or prove prejudice against his client; otherwise, every time a judge reproved or deprecated the conduct of an attorney in the trial of a case, and no matter how justly even as to matters preparatory to bringing it to trial, another judge would have to be called in. Higgins v. San Diego, supra; Conn v. Chadwick, supra; State v. District Court, 22 Mont. 220, 56 Pac. 219; Hutchinson v. Manchester St. Ry., 73 N. H. 271, 60 Atl. 1011.

Little comment is needed upon that portion of the petition which alleges on "information and belief" that Harlan has such influence over the mind of the court that defendant cannot obtain a fair and impartial hearing. The affidavits in support of the petition are nothing more than the naked assertion that the vice president and treasurer of the defendant "have been informed and believe that the de-

fendant has been informed and believes" that it cannot obtain justice, etc. From whom the information was obtained, or when, or what its nature, is carefully concealed.

The petitioner gives no reasons why it believes what it has heard, except that it has heard it, and does not even aver that it has made the slightest inquiry whether its informer stated the truth. "The attorney of the defendant" certified that he "prepared the foregoing affidavits," and wrote the petition that characterized the letter to Judge Shelby correcting the statements about "a four years' delay" as "engaging in a personal discussion with a litigant." The corporate entity is not morally responsible for the utterances others put in its mouth. Conscious that they can have no influence whatever on the mind of the court in passing upon the merits of the case, I feel it my imperative duty to sit. To do otherwise would set the evil precedent of weakly betraying a trust, because a litigant retailed on information and belief anonymous slanders of a judge.

As stated, all of the attorneys consulted, with two exceptions, advised, conceding the statute to be constitutional, that the judge was bound to inquire whether the facts and reasons set up were sufficient to show personal bias or prejudice, and, if they did not, to overrule the petition, and that, while the petition here did not make a case under the statute, still, if it did, section 21 of the Judicial Code as now framed is unconstitutional. The two who advised to the contrary held that the statute, being highly remedial, applied to cases pending at the time it took effect, and that a petition presented under it came in time if filed at the first term at which the statute became operative and before the cause was set down for trial; that the court's ruling as to what attorney stood in the relation of "counsel of record" was too restrictive; and that, the petition having alleged the correspondence as a matter of fact, the presiding judge, under the plain terms of the statute, could not pass upon the sufficiency of the facts averred to show personal bias or prejudice, but was bound to "proceed no further," unless the statute were unconstitutional and they were of the opinion that the section is constitutional. If there be error in the ruling that the petition did not conform to the statute, or if it did conform, in holding that the facts alleged were insufficient to prove bias or prejudice, still there would be no error in overruling the application if the statute itself be unconstitutional. We are thus necessarily brought to the consideration of that question.

[9] The power to designate another than the regular judge to hold a term of court, when the regular judge is disqualified or cannot attend, or to try particular cases on the calendar as to which the regular judge is in law disqualified, is not necessarily judicial. That is frequently done by the Governor, the head of the executive department; but such exercise of power by a member of the executive department presents quite a different question from arming a Governor with the power to determine that the regular judge, on the facts of a particular case, is disqualified to try it, and thereupon empowering him to designate another judge. Certainly it has never been held, in the federal jurisprudence at least, that such a function could lawfully be

committed to a party to the suit, and that his mere ex parte affidavit, regardless of its truth, could make it the absolute duty of the regular judge to recuse himself, and lay a peremptory command upon another judge to send some judge to displace the regular judge in his own court, because a litigant made an affidavit that the latter is disqualified to sit under the facts of a particular case. If the power to decide, upon the facts of a given case pending in the court, that a judge is disqualified to sit in it, is judicial, it is manifest that such a power cannot be exercised except by some member of the judicial department, and that the question cannot be adjudicated by the command of the statute that an ex parte affidavit of a litigant shall ipso facto disqualify a judge. This results inevitably from the nature of the judicial power of the United States, and the separation of our government into three great departments, none of which can exercise any power properly belonging to the other.

As said in Kilbourn v. Thompson, 103 U. S. 168, 26 L. Ed. 377, the Constitution divides the powers of the government which it establishes into the three departments—the executive, the legislative, and the judicial—and unlimited power is conferred on no department or officer of the government. It is essential to the successful working of the system that the lines which separate those departments shall be clearly defined and closely followed, and that neither of them shall be permitted to encroach upon the powers exclusively confided to the others. That instrument has marked out, in its three primary articles, the allotment of power to those departments, and no judicial power, except in the instances expressly mentioned in the Constitution, is vested in Congress or either branch of it. On the contrary, it declares that the judicial power of the United States shall be vested in one Supreme Court, and such inferior courts as the Congress may from time to time establish and ordain. The only instances in which the Congress or either of its houses is vested with judicial power are in the matter of impeachments, deciding contested elections, and determining the qualifications of its members, punishing them for disorderly conduct, and dealing with contumacious witnesses which are lawfully called before it. Aside from these matters, the power of Congress is purely legislative, and it cannot, save as to such matters, exercise any judicial power whatever in any degree, or to any extent, in any case.

The difference between the departments undoubtedly is that the Legislature makes, the executive executes, and the judiciary construes the law. Wayman v. Southard, 10 Wheat. 46, 6 L. Ed. 253. That which distinguishes a judicial from a legislative act is that the one is a determination of what the existing law is, in relation to some existing thing already done or happened, while the other is a predetermination of what the law shall be for the regulation of all future cases falling within its provisions. To adjudicate upon, and protect, the rights and interests of individual citizens, and to that end to construe and apply the laws, is the peculiar province of the judicial department. As said by Woodbury, J., in Merrill v. Sherburne, 1 N. H. 199, 203 (8 Am. Dec. 52):

"No particular definition of judicial power is given in the Constitution, and, considering the general nature of the instrument, none was to be expected. * * * These words possess a customary signification, and a definition of them would have been useless. * * * On general principles. therefore, those inquiries, deliberations, orders, and decrees, which are peculiar to such a department, must in their nature be judicial acts. * * * It is the province of judges to determine what is the law upon existing cases. In fine, the law is applied by one and made by the other. To do the first therefore—to compare the claims of parties with the law of the land before established—is in its nature a judicial act. To declare what the law is or has been is judicial power; to declare what the law shall be is legislative power."

What the judicial power included was well understood in the mother country long before the adoption of the Constitution, and that instrument in using the term "judicial power" necessarily included in the grant of the power its well-known attributes at the common law. 1 Kent, Com. 336; Smith v. Alabama, 124 U. S. 465, 8 Sup. Ct. 564, 31 L. Ed. 508.

The cases to which the judicial power extends are all defined in section 2 of article 3 of the Constitution. The suit in which this petition is filed falls strictly within the class of "cases" to which the judicial power extends, and over which this court is given jurisdiction —"a suit of a civil nature between citizens of different states." The fate of the petition depends upon the application of the Constitution and laws, and involves the determination of the right of a party, claimed under the particular facts of his case, to have certain judicial steps taken therein by the judge of the court in which the petition is pending. Plainly, therefore, the petition presents a judicial question which can be decided only by a court or judge, and then only by the exercise of judicial power.

When Congress creates an inferior court and distributes to it jurisdiction over such subject-matters falling within the judicial power as Congress sees proper to confer, the particular court eo instanti is armed, by virtue of the Constitution itself, with all the power essential to preserve its independence, to prevent the usurpation of its powers by other departments, and to enable the court to exercise the judicial power thus conferred as to every matter involving a judicial determination in any case before it. While Congress may regulate the methods of practice and procedure in the court in many respects, it cannot exercise this power of regulation so as to take from the courts, under the guise of regulating its procedure, the right to exercise judicial power as to any matter arising in the case whose disposition properly calls for the exercise of judicial power. One of these inherent powers of the courts, indisputably judicial, and indispensable to the independence of the courts, is the power to determine for themselves whether a judge of the court lawfully appointed and qualified is disqualified on the state of facts presented in a particular case to sit on the trial of it. Trustees, etc., v. Bailey, 10 Fla. 213; Waterhouse v. Marten, 1 Peck (Tenn.) 374; Philadelphia v. Fox, 64 Pa. 169; State v. De Maio, 70 N. J. Law, 220, 58 Atl. 173.

Is not the real operation of section 21 of the Judicial Code to arm the litigant, in everything except mere form, with the judicial power of the court, and to leave it absolutely to the litigant to decide and de-

·termine, in his own case upon the particular facts as he selects and presents them in his ex parte affidavit, whether they are true or false, that the judge is disqualified, although in truth and in fact the judge may have neither bias nor prejudice and is in every way competent to sit on the trial of the case? Unquestionably personal prejudice or bias as to parties may be made a cause for disqualifying a judge on the trial of a particular case. When, however, as here, the statute does not undertake to define or prescribe the facts which shall constitute bias or prejudice or the evidence which shall prove it, and commands that an ex parte affidavit of a litigant shall establish not only that the facts selected and grouped in the affidavit constitute personal bias or prejudice in the eye of the law, but that their existence is to be taken as conclusively proved by the ex parte affidavit, whether true or false, and ipso facto disqualify the judge—has not Congress inevitably delegated to the litigant, in effect, the legislative power to prescribe and define the causes which when proved shall constitute personal prejudice or bias, and also delegated to the litigant the judicial power of determining in his own case, upon its particular facts as he makes them to appear in his affidavit, both the law and fact in his favor, and thereupon of stripping the judge of his functions in his own court, without any investigation by him or hearing by any other judicial officer?

It has been the law for centuries that a judge "ought not to withdraw upon a recusation unless the cause is true in fact and sufficient in law, because the office of judge is one necessary for the administration of justice from which a judge should not be permitted to withdraw without sufficient ground." As said in Ex parte State Bar Association, 92 Ala. 117, 8 South. 769:

"It can never rest in the discretion of a judge whether he shall sit in a given case. If he is not disqualified under the Constitution, it is his duty to sit—a duty he cannot delegate or repudiate, and which no consent can devolve upon another."

Quite true it is that the judge has no concern in presiding on the trial of any particular case, and no litigant has any right to have a particular judge try his case; but every litigant under the Constitution and laws has the right to insist that his case be tried by the regular judge, if he is holding the court, unless he is shown to be disqualified, and it is essential to the orderly administration of justice and the integrity of the Constitution that judges appointed under it to administer its judicial power shall not be wrongfully driven from the judgment seats in any case, whether it results from open violence or the improper control of the courts or judges by other departments of the government. If the right of a duly appointed and qualified judge to sit in a particular case under its particular facts is challenged, the question must be determined by the other judges of the court if there are more than one, and by him alone if he is the only judge, subject to such judicial revision of his action as the law may provide. Authorities supra. Congress cannot directly or indirectly decide such questions. It cannot lawfully enact that a judge, who is in truth qualified, is in law disqualified, because a suitor makes an affidavit to

that effect, and make that ex parte statement conclusive proof of the disqualification and cut off all judicial inquiry as to the judge's competency. It cannot enact lawfully that any state of facts or reasons which a litigant may choose to array, when presented in his affidavit, shall ipso facto disqualify the judge. It may lawfully enact that where the state of facts disclosed by an affidavit, if true, show conditions which, according to experience, and in the light of human nature, prove unfitness and lack of impartiality in a particular case, that such facts, if found to exist by some judicial tribunal, shall disqualify the judge in question and prevent his trial of the case, but it cannot make the ex parte affidavit of the litigant conclusive proof of the facts or lawfully require the judge, without judicial inquiry by him or some other judge, eo instanti to abdicate his functions.

It is not proof or evidence of the unfitness of a judge in a particular case that an honest but suspicious suitor, or a vicious and dishonest one, swears that he cannot obtain justice before him. Such an affidavit proves only the animus or belief of the man who makes it. It does not prove partisanship or personal prejudice or bias in the judge. If the judge is not biased or prejudiced in fact, a false allegation or imputation that he is, made in the affidavit of a litigant, cannot change the actual mental or moral status of a judge or unfit him to try a particular case. Affidavits cannot change a pure and impartial judge into a bad official. It is the existence of bias or prejudice, and not the charge, whether honestly or dishonestly made, which constitutes the disqualification. A man by an ex parte affidavit may conclude his own rights or destroy his own reputation, but he can never conclude the rights of others or impose a discreditable status upon a public official by his mere statement of that which does not exist, however solemnly alleged in an ex parte affidavit. To hold otherwise would be to strike down a great principle of justice, which cannot be abandoned without destroying the very foundations of our jurisprudence.

In such search of the reports as I have been able to make in the time at my disposal, I do not find decisions in more than two of the states having statutes similar to the Judicial Code where objections such as these now presented have either been raised or overruled. In a number of states having similar statutes, sometimes, however, by force of constitutional provisions, and in others where the constitutional provisions regarding the displacement of judges are different from the Constitution of the United States, the courts have constantly treated such statutes as constitutional. Those courts would not be bound by their former decisions, if the constitutionality of the statute were assailed on the grounds now suggested. Boyd v. Alabama, 94 U. S. 648, 24 L. Ed. 302. Perhaps the leading case upholding the constitutionality of statutes less guarded than the Judicial Code is State ex rel. v. Clancey, 30 Mont. 529, 539, 77 Pac. 312, 315, where the court likens the question to a change of venue and says:

"No one has yet denied the right of the Legislature to provide for a change of venue on such terms as it may propose."

"Change of venue," if one speaks at all accurately, means only a change of the place of the trial from one county to another county or district, and the expression is sometimes used to denote the transfer of a case from one court to another in the same district or county. It is a misuse of terms to say that the venue is changed when the trial is had in the court where the suit was brought and some other than the regular judge is called in to preside on the trial, in the very court in which the record has all the while remained. The questions arising' on a change of venue are far different in nature and constitutional consequence from those involved in a proceeding to displace the regular judge as to a case in his own court, and bring another judge there to try it upon an ex parte affidavit of a suitor, although the judge may not be disqualified in truth, and by the mere filing of the affidavit shut off all judicial inquiry by the judge concerned or any other judicial officer, as to the truth of the facts alleged upon which alone the right to displace the judge depends. In a change of venue no attempt is made to strip a judge of his functions in his own court, and the functions and rights of the regular judge therein are in no wise altered or impaired by the transfer of the particular case; while the reverse is true when the case remains in the court and the regular judge is taken from the bench on an ex parte affidavit of bias or prejudice, regardless of whether it is true or false, but which ipso facto strips him of his functions in the particular case.

To say that the challenge itself, regardless of the grounds for it, itself works a disqualification of the judge because it puts him in a class which it is the policy of the Constitution not to permit to try such questions, is to beg the whole question. The contention rests on a wholly unfounded premise. The judge of a federal court holds his office during good behavior, and the constitutional provisions regarding his induction into office and his displacement therefrom forbid that he be stripped of any of his functions except upon conviction by the Senate of high crimes and misdemeanors after he has had opportunity to be heard; or in consequence of the existence of a peculiar state of facts in particular cases declared by law and ascertained by the courts. The Constitution and laws require that he sit in every case in his court, unless he is excluded for causes which disqualify him, the nature of which must be ascertained by law, and the existence of which must be declared by some judicial tribunal. Congress has no power to change the Constitution and revise its policy or to get rid of. a judge in any case, in any other way than the Constitution provides. The judge's general fitness and qualification are adjudged by the operation of the Constitution itself when he is appointed, confirmed, commissioned, and qualified. They cannot be gainsaid or attacked except by impeachment as the Constitution provides. If he be an improper person to exercise his functions in any particular case, it must be because of the existence of facts which under the law unfit him to impartially administer justice in it, and the existence of these causes must be ascertained by some judicial tribunal. What these causes are we have seen in an earlier part of this opinion. Congress has no power to declare, what the legislation in some of the states necessarily as-

serts, that a competent judge is disqualified because a suitor swears that he believes he is. Neither, when the litigant assigns reasons, can Congress enact that the assignment of such reasons, if they are insufficient in law and morals to prove disqualification, shall be taken to have conclusively proved it. The reasons alleged must be substantial and sufficient, and their truth must be ascertained by a proper tribunal, before the judge can be required to abdicate his functions. Congress has no power to leave it to the arbitrary discretion of a litigant to determine whether or not the judge is a fit person to preside in a particular case, and make his affidavit work a disqualification, although its allegations may be insufficient in law and untrue in point of fact. To so hold would be to decide that under the Constitution and laws a litigant may disqualify a competent judge whenever he chooses, if he is willing to run the risk of prosecution for perjury; and this, too, in the teeth of the Constitution, which provides other and exclusive modes for determining such questions.

The reason of many decided cases, and the express decisions in some of them, compel the conclusion that statutes like the one under consideration are unconstitutional. See Conn v. Chadwick, 17 Fla. 440; Board of Commissioners v. State, 120 Ind. 282, 22 N. E. 255; White, Auditor, v. State ex rel., 123 Ala. 577, 26 South. 343; Petition of Splain, 123 Pa. 527, 540, 16 Atl. 481; Kilbourn v. Thompson, 103 U. S. 168, 26 L. Ed. 377 (7 headnote); Mabry v. Baxter, 11 Heisk. (Tenn.) 689, 691; Cooley's Constitutional Limitations (5th Ed.) p. 115, § 96, and see cases there cited in margins.

No sophistry can conceal the plain situation, if the command of the statute be followed. It compels the judge, on presentation of the affidavit and application with proper certificate of counsel and compliance with the other requisites of the statute, to vacate the bench without any inquiry or investigation, as to the truth or effect of the facts alleged in the petition by the judge in question or any other judicial authority. The affidavit maker in fact, though not in name, puts on the judicial robes and excludes the presiding judge and all other judicial authority from any voice in determining the matter, and by the mere filing of his affidavit renders judgment of disqualification and executes it. In the words of Chief Justice Nickelson, in Mabry v. Baxter, supra:

"The act in question is legislative in form, but it operates expressly on suits pending in the court. * * * To obtain a new right conferred, the suitor is to make a motion in the court. This motion must be acted upon by the judge and a record made, and the statute prescribes what the judgment shall be. The judge makes the order nominally, but as he has no discretion and acts under the Legislature, it is to all intents and purposes the act of the Legislature and an exercise by it of judicial power."

To quote the language of the Supreme Court of Alabama in Sanders v. Cabaniss, 43 Ala. 173, dealing with a statute identical in principle:

"The chancellor is expressly prohibited from exercising any judgment whatever in the matter, nor is he allowed under any circumstances to deny the application; grant it he must. He is in fact made the mere instrument of the Legislature to register its will—nothing more. This we hold was a clear and undoubted exercise of judicial power on the part of the Legislature, and that, too, in the most objectionable way—by indirection."

The question presented is the same in principle as that decided in United States v. Klein, 80 U. S. 129, 146, 20 L. Ed. 519, where Chief Justice Chase says:

"It is evident from this statement that the denial of jurisdiction * * * is founded solely on the application of a rule of decisions in causes pending prescribed by Congress."

And asks:

"What is this but to prescribe a rule for the decision of a cause in a particular way? Can we do so without allowing one party to the controversy to decide it in his own favor? Can we do so without allowing that the Legislature may prescribe rules of decision to the judicial department of the government in cases pending before it?"

The court answered all these questions in the negative.

The fact that it is unpleasant to a judge whose impartiality is questioned to pass upon an allegation of his unworthiness to try a case, or that he is not the fittest trier of such questions, does not authorize Congress to disregard the limitations of the Constitution and confer upon the litigant the arbitrary power to condemn the judge and decide the matter in his own favor. There must be some trier of the question, and from the necessity of the case it must be the judge himself, unless it is tried by some other judge or court. An awkward situation does not authorize a violation of the Constitution to remedy it. The remedy lies close at the hands of the legislative power. It is the duty of the Legislature not only to see that the courts are pure and impartial, but that justice shall be so administered that they shall be free from suspicion. I do not doubt the power of Congress, when a judge is challenged for personal prejudice or bias, to require that he shall proceed no further, until the truth of the challenge is investigated and determined by another judge, and to enact that the judge in question shall preside or not, in the future stages of the litigation, as the other judge may find to be just and right. Beyond this Congress has no constitutional warrant to go, or to make the affidavit of a suitor automatically work out a disqualification of a judge throughout every stage of his case.

The inherent powers of courts and judges set up to administer the judicial power of the United States have always been held to include ample authority to protect them against insult and assault, whether by physical violence or contumelious behavior and words, and it has been held time and time again that the possession of such powers is essential to their independence and well-being. In a petition giving facts to show personal bias or prejudice, an unscrupulous litigant, if his passions or those of his attorney permit the one to swear, and the other to certify that he swears in good faith, may willfully and falsely charge the presiding judge with high crimes and misdemeanors or other disreputable things without a semblance of truth or decent excuse for doing so. Shackled by this statute, if it be valid, an innocent judge is compelled to enter the slanders upon the records of the court and slink from the discharge of his duty in the particular case as though he were already convicted of crime. If the courts are to last, if they are to perform their functions under the Constitution and ex-

ercise the powers committed to them, no such summary way of dealing with, and it may be destroying, a judge can have the force of law. While any conscientious judge would gladly welcome any effort on constitutional lines to remedy the evils at which this statute is aimed, and would feel a sense of relief if the statute were so altered as to conform to the Constitution and thus free him from the embarrassments resulting under the present statute, yet, when this is attempted by a statute which outlaws the judge and drives him from the bench in the particular case on the allegations of an affidavit, whether true or false, which condemn him without any defense or hearing of any kind as an unfaithful and incompetent judge, a court which is mindful of its obligation to the Constitution and the sacredness of its oath of office must decline to give the statute any effect and treat it as a nullity. If the judge is suspected, whether rightfully or wrongfully, of bias or prejudice, the existence of that bias or prejudice must be ascertained by some judicial authority, and the judge must not be left defenseless against such assaults because a litigant in his court makes an ex parte affidavit. If the matter be referred to some other judge, all the rights of the litigant are preserved and also the dignity and honor of the courts. This is not the case under the present statute. It makes the affidavit maker, in effect, lawmaker, judge, and executioner. The judge may be entirely blameless, but he is not permitted to defend himself or show the falsity of the accusation, and thus is branded for all time on the records of his court as an unworthy judge.